UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
———————————————————————
                                  )
JON WHYMAN,                       )
                                  )
         Plaintiff,               )
                                  )
v.                                )        Civil Action No. 16-cv-10049-LTS
                                  )
                                  )
SCOTT WHALEN, in his Personal and )
Official Capacities,              )
         Defendant.               )
                                  )
———————————————————————
```

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

June 22, 2018

SOROKIN, J.

On January 13, 2016, plaintiff Jon Whyman filed a complaint in this Court against

Sergeant Scott Whalen, a police officer in the city of Somerville, Massachusetts. Doc. No. 11.

The Complaint alleges violations of the Fourth and Fourteenth Amendments of the United States

Constitution and the Massachusetts Civil Rights Acts ("the M.C.R.A."), intentional infliction of

emotional distress ("IIED"), malicious prosecution, interference with advantageous relations, and

defamation, all arising out of Whalen's search of Whyman's home executed under the authority

of a state court search warrant and Whalen's subsequent interaction with an employee of

Whyman.[1] Id. Whalen moves for summary judgment, Doc. No. 44; Whyman opposes. Doc. No.

52.

---

[1] The Complaint additionally alleged a violation of MGL c. 149 § 19, which the Court dismissed
on July 15, 2016. Doc. No. 25.

1

I.    THE LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute "is one on which the evidence would enable a reasonable jury to find the fact in favor of either party." Perez v. Lorraine Enters., Inc., 769 F.3d 23, 29 (1st Cir. 2014). "A 'material' fact is one that is relevant in the sense that it has the capacity to change the outcome of the jury's determination." Id. (citation omitted).

Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

II.     FOURTH AMENDMENT CLAIM

Count I of the Complaint challenges, under the Fourth Amendment, the legality of the state court search warrant because, according to Whyman, the affidavit ("The Affidavit") submitted by Whalen in his application for a warrant to search the home of Whyman (1) on its face fails to establish probable cause and (2) is untruthful and contains a material omission without which probable cause would not exist. Doc. No. 11 at ¶¶ 47-56.

"[W]hether [an] affidavit[], on [its] face, demonstrate[s] probable cause, is a question of law," McColley v. Cty. of Rensselaer, 740 F.3d 817, 835 n.10 (2d Cir. 2014); see Stewart v. Sonneborn, 98 U.S. 187, 194 (1878) ("The question of probable cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law."). Probable cause exists where "the totality of the circumstances suggests that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013) (quoting United States v. Hicks, 575 F.3d 130, 136 (1st Cir.2009). To establish probable cause, an affidavit submitted with a warrant application "need only warrant a man of reasonable caution to believe that evidence of a crime will be found. The probable cause standard does not demand showing that such a belief be correct or more likely true than false." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (citing Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)).[2]

---

[2] Although not relevant to the probable cause analysis, the following fact is relevant to some of the other claims before the Court: there is no evidence whatsoever in the record that Whalen knew of or had any contact with Whyman prior to the investigation that is the subject of this lawsuit.

Whalen's affidavit supplied the following evidence to establish a "fair probability" that evidence of a crime would be found at Whyman's residence at 17 Kenney Drive:

1. Jon Whyman previously dated a woman named Suzanne Cyr. Doc. No. 49-4 at ¶ 15.

2. Suzanne Cyr's mother Teresa Vicente reported "receiving disturbing text messages" the focus of which was her daughter Cyr, as well as multimedia messages containing nude photographs of Cyr. Doc. No. 49-4 at ¶ 3. Other members of Cyr's family reportedly had also received similar messages. Id. at ¶ 5.

3. The person "texting these messages appear[ed] to know a lot of information about [Cyr]." Id. The person indicated that "they [knew] where Cyr [was] currently working and that she [was] working at a bar a couple nights a week." Id. at ¶ 6.

4. Cyr's phone was reportedly "hacked" by a male that she knew, Matthew Maguire, shortly before the commencement of the foregoing harassment campaign. Id. at ¶ 5. At this time, Cyr's Facebook, Gmail, and Yahoo accounts were also hacked, such that Cyr could no longer login to the accounts. Id. at ¶ 7

5. A Facebook account under the name "Chad Garcia" was reportedly used by Maguire. Id. at ¶ 14. A series of Facebook messages were sent from the "Chad Garcia" account to another account (hereinafter "John"), the user of which referred to himself as "John." Id. at ¶ 15. John sent a photo to Chad Garcia, saying "that is her on stage" and "she lived with me in Lynnfield." Id. To which Chad Garcia responded, "Whyman???" Id. Garcia also, on several occasions, requested to see a video that John purportedly had, and John responded that he would send the video after removing sound. Id. at ¶¶ 14-15.

6.  When Whyman dated Cyr, he lived with her at 6 Glenn Drive, Lynnfield, MA ("the Lynnfield address"). Id. at ¶ 16.

7.  Some of the nude photographs of Cyr sent as part of the harassing messages were sent from the cellphone number 603-657-5726 ("the cellphone number"). Id. at ¶ 17. The cellphone number was registered with the name of "John Smith" at the Lynnfield address where Whyman lived with Cyr and to an email address from which harassing emails had been sent to Cyr. Id. at ¶¶ 16-17.

8.  At the time of Whalen's investigation, a search of the RMV database revealed Jon Whyman now resided at 17 Kenney Drive—the address Whalen applied for a warrant to search. Id. at ¶ 18.

The forgoing is sufficient to establish probable cause as it might lead "a man of reasonable caution to believe that evidence of a crime would be found" at 17 Kenney Drive, which is precisely what the warrant sought. Id. at 1; Doc. No. 56-12. The affidavit plainly establishes probable cause to believe Whyman lived at Lynnfield with Cyr and that he had a previous relationship with her; it also plainly establishes that, at the time of the search, he resided at 17 Kenney Drive. The only question is whether the affidavit establishes probable cause to believe that evidence of a crime would be found at 17 Kenney Drive, Whyman's home at the time of the search. While close, under the totality of the relevant circumstances put before the magistrate, the forgoing does establish probable cause because the Facebook exchange is sufficient to infer, for probable cause purposes, that, at least at the relevant time, i.e. when the Facebook users were discussing and exchanging photographs of Cyr, a person of reasonable caution would believe Whyman was using the "John" Facebook account and possessed the type of information being used to harass Cyr and her family. This combined with the 603 cellphone number suffices to

make the necessary connection between Whyman's home and the crime alleged. Thus, the Court rejects Whyman's attack on the facial validity of the evidence submitted to obtain the warrant.

In the alternative, Whyman argues that Whalen violated his Fourth Amendment rights by omitting material information from the search warrant affidavit, which, had it been included, would have shown no probable cause existed for the warrant to issue. Doc. No. 54 at 7. "[T]he intentional or reckless omission of material exculpatory facts from information presented to a magistrate may . . . amount to a Fourth Amendment violation" if the officer acted "in reckless disregard for the truth." Burke v. Town of Walpole, 405 F.3d 66, 81 (1st Cir. 2005). "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination." Id. To establish a Fourth Amendment violation, the omitted facts must be material to the probable cause determination. Id. at 82. "[T]o determine materiality of the . . . omissions, we . . . insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id.

Whalen omitted the following allegedly exculpatory facts from the information that he presented in the search warrant affidavit: (1) in the numerous pages of Facebook conversation between Garcia and the John Facebook account, there are messages indicating that the user of the John account is not Whyman, see Doc. No. 56-6 at 111-13 (describing how Garcia "first accus[ed] the [account user] of being female," "then [] the person of being Whyman," "then [] of not being Whyman," and finally "of being Shawn."); and (2) among the text messages between Vicente and her harasser is a text message by Vicente to the harasser with a 2005 sent date, a date long before before Cyr was acquainted with Whyman. See Doc. No. 56-4 at 10.

The Court finds that, as a matter of law, the omitted information was not critical to the determination of probable cause. First, the 2005 text message date is "nonsensical;" the Apple

iPhone from which the message was sent was not issued until June of 2007. Doc. No. 57-1 at 2. The date on the message was therefore most likely an error, which sometimes results when a deleted text message is recovered, as was the case here. Id. at 1. Whalen has submitted a sworn uncontradicted affidavit to this effect. See id. The omission of the "2005" text message from the Affidavit is of no significance. Second, the omitted Facebook messages, which show, at different times, Garcia considered individuals other than Whyman as possibly then operating the John Facebook account, do not defeat probable cause. The messages that were included in the affidavit establish that Garcia did not know who the operator or operators of the John account was/were but that he considered Whyman as a possibility. See supra at 4 (Garcia asks "Whyman???"). The information sent from "John" supported that conclusion. See Doc. No. 49-4 at ¶ 15 (stating "she lived with me in Lynnfield"). Inserting the omitted text messages, which were sent on different days in the course of different threads, at times other than the time in question, fails to undermine, for probable cause purposes, the inference arising from the cited text messages that a person who had lived with Cyr in Lynnfield supplied a photo of her to McGuire (for whom the Affidavit plainly establishes probable cause) which establishes, when coupled with the other facts in the Affidavit, probable cause to believe that Whyman's home may have contained evidence related to the harassment crimes someone committed. While Whyman would have been well served to include the other text messages as it may well have avoided subsequent proceedings such as this one, it was not an omission sufficient to defeat the validity of Whyman's reliance on the warrant.

For the foregoing reasons, the Court finds, as a matter of law, that the affidavit establishes probable cause with or without the omissions.[3] Summary judgment is therefore ALLOWED as to Count I.

III.    SUBSTANTIVE DUE PROCESS CLAIM

Count II of the Complaint challenges Whalen's withholding of information from his search warrant application as a violation of Whyman's substantive due process rights. Doc. No. 11 at ¶¶ 57-66. The threshold for establishing a violation of substantive due process is "a high one." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992). The challenged government conduct must be counter to the "concept of ordered liberty" or "shocking or violative of universal standards of decency." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) (quotation omitted); Albright v. Oliver, 510 U.S. 266, 301 n.18 (1994). Whyman has set forth no facts showing that Whalen's omissions of Facebook messages and the 2005 text message sent date rise to this level. In any event, "[w]hen a specific provision of the Constitution protects individuals against a particular kind of . . . intrusion . . . individuals seeking redress for such an intrusion must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process." S. Cty. Sand & Gravel Co. v. Town of S. Kingstown, 160 F.3d 834, 835 (1st Cir. 1998). Here, "[b]ecause [Whyman]'s lament, at bottom, is a garden-variety [Fourth Amendment] claim, the [Fourth Amendment], not

_____

[3] Even if the affidavit had failed to establish probable cause or if the omissions were material to that finding, Whalen is entitled to qualified immunity. See Groh v. Ramirez, 540 U.S. 551, 563 (2004) (qualified immunity applies unless it "would be clear to a reasonable officer that his conduct was unlawful.").

substantive due process . . . suppl[ies] the proper decisional framework." Id.; see supra at 2-6.

Accordingly, summary judgment is therefore ALLOWED as to Count II.

IV.     MASSACHUSETTS CIVIL RIGHTS ACT CLAIMS

Counts IV and V of the Complaint allege Whalen violated Whyman's Constitutional

rights by illegally searching Whyman's home and by attempting to intimidate Whyman at his

place of work. Doc. Nos. 11 at ¶¶ 73-85; Doc. No. 54 at 12-16.  The Massachusetts Civil Rights

Act ("MCRA") provides a cause of action for "any person whose exercise or enjoyment of rights

secured by the constitution or laws of the United States, or of rights secured by the constitution

or laws of the commonwealth, has been interfered with, or attempted to be interfered with" Mass.

Gen. Laws c. 12, § 11H, "by threats, intimidation or coercion," Id. at § 11I. In the context of the

MCRA, a "threat" is the "intentional exertion of pressure to make another fearful or

apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v.

Blake, 631 N.E.2d 985 (1994). "Intimidation" is "putting a person in fear for the purpose of

compelling or deterring his or her conduct." Santiago v. Keyes, 890 F. Supp. 2d 149, 154 (D.

Mass. 2012) (citing Planned Parenthood, 631 N.E.2d at 990). Finally, "coercion" is the

"application to another of such force, either physical or moral, as to constrain him to do against

his will something he would not otherwise have done." Planned Parenthood, 631 N.E.2d at 990

(quoting Coercion, Webster's New International Dictionary (2d ed. 1959)). In assessing a claim

under the MCRA, the Court applies the objective standard of whether a reasonable person would

be threatened, intimidated, or coerced by the defendant's conduct. Id.

Whyman's first MCRA claim (Count IV) asserts that  Whalen violated Whyman's Fourth

Amendment right by gaining forcible entry to Whyman's home by use of threats, coercion, and

force. Doc. No. 54 at 13. In support of this claim, Whyman sets forth the following facts, several

of which are disputed:[4] (1) Whalen and several other officers pulled Christopher Whyman, Whyman's son, over on a street nearby Whyman's residence. Id. (2) Whalen asked Christopher Whyman to let the officers into Whyman's home, and Christopher Whyman refused. Id. (3) Whalen then "threatened to seize the marijuana plants in Christopher Whyman's vehicle" and to "break down his father's [Whyman's] door if Christopher Whyman did not let him into the house." Id. at 13-14; see Doc. No. 56-11 at 11. (4) Christopher Whyman then led the officers back to Whyman's residence, where he let them in. Doc. No. 56-11 at 13. (5) No one else was home at the time of the execution of the warrant. Doc. No. 54 at 13.

The forgoing does not support an MCRA claim. Whyman has failed to present facts sufficient to establish a violation of his rights.[5] Whalen's stop of Christopher Whyman is not a violation of Plaintiff Whyman's rights; Whyman does not argue otherwise. See generally Doc. No. 54. Instead, Whyman argues that his rights were violated by Whalen's forcible entry into his home.[6]

---

[4] These facts recited are not in the complaint nor are they recited in Whalen's Statement of Facts nor Whyman's Response to Whalen's Statement of Facts. See generally Doc. Nos. 11; 55. They are presented by Whyman for the first time in his opposition to Whalen's motion for summary judgment. See Doc. No. 54 at 13-14. The facts are supported by the deposition of Christopher Whyman, Whyman's son, which is in the summary judgment record. See Doc. No. 56-11. Whalen disputes several of these facts. See Doc. Nos. 57 at 8-9; 57-2. Because Whalen has moved for summary judgment, the Court accepts Whyman's version, though disputed, of these facts and draws all reasonable inferences in Whyman's favor.

[5] Christopher Whyman is not the plaintiff in this case so the Court need not address whether anyone violated Christopher Whyman's rights.

[6] Whyman also makes passing reference to the time of the execution of the warrant as a violation of his rights "given the restrictions of [the] warrant." Doc. No. 54 at 14. The warrant forbids a "search at any time during the night." Doc. No. 56-12. The search was executed at 6:00 p.m. Doc. No. 57-2 at 2. "[F]or warrant purposes, nighttime begins at 10 p.m. and ends at 6 a.m." Com. v. Grimshaw, 413 Mass. 73, 81 (1992). The warrant was therefore, as required, executed during daytime hours.

The search warrant authorizing Whalen to search Whyman's residence required "announcement." See Doc. No. 56-12. Whalen entered Whyman's residence through Christopher Whyman, and therefore never technically "knocked and announced" his presence at the residence before entering. However, in this case, announcement was either satisfied by entry with Christopher Whyman or not required. Pursuant to the knock and announce requirement, an officer may forcibly enter a property, but he must first knock and announce his presence and request permission to enter. See Wilson v. Arkansas, 514 U.S. 927, 931 (quotations omitted) ("[B]efore he breaks it [the door], he ought to signify the cause of his coming, and . . . make request to open [the] door[.]"). The announcement rule is "not absolute." United States v. Garcia-Hernandez, 659 F.3d 108, 111 (1st Cir. 2011). "For instance, a failure will not violate the rule when officers 'have a reasonable suspicion that knocking and announcing their presence . . . would be dangerous or futile[.]" Id. (quoting Richards v. Wisconsin, 520 U.S. 385, 394 (1997)). Here, Whalen did not need to announce his presence because to do so would have been futile. No one was at Whyman's residence at the time of the execution of the warrant, Doc. Nos. 54 at 13; 57-3 at 1, and he made peaceable entry with Christopher Whyman. Accordingly, under the circumstances, to knock and announce would have been a "useless gesture" and was therefore not required. See Com. v. Antwine, 417 Mass. 637, 639 (1994). In any event, there is no evidence of forcible entry. Com. v. Rivera, 710 N.E.2d 950, 953 (1999) ("Before attempting forcibly to enter a private dwelling to execute a warrant, police must knock, announce their identity . . . Absent forcible entry, this rule is inapplicable.") (emphasis in original). Whalen entered Whyman's residence pursuant to a lawful warrant; his entry did not violate Whyman's

rights. On these facts, Whyman cannot establish the existence of an element essential to his MCRA claim—a violation of his rights—arising from Whalen's entry into his property.[7]

Whyman's second set of MCRA claims (Count V) contend that his First Amendment free speech right and his right to be free in his employment pursuits were violated by Whalen's comments to Whyman's employee while the employee was at Somerville City Hall. In support of these claims, Whyman presents the following facts: Some weeks following the execution of the search warrant, Whalen learned that Whyman was pursuing a possible lawsuit against Whalen. Doc. No. 55 at ¶ 208. After learning of the possible lawsuit, Whalen noticed Whyman in the Somerville Department of Public Works Building ("the DPW"). Id. at ¶ 210. Whyman was at the DPW to oversee snow removal as a part of his work as the owner and operator of a construction company. Id. at ¶ 210, Doc. No. 11 at ¶ 5. Whalen then saw an "individual with a Whyman shirt on and engaged him in conversation asking him if he worked for Whyman[.]" Doc. No. 55 at ¶ 211. When the individual responded in the affirmative, Whalen stated "I ought to throw his [Whyman's] ass out of here." Id. "[S]hortly after th[is] conversation," Whalen spoke with two employees of DPW asking that he [Whalen] not be placed in a work assignment "in the group with [Whyman and Whyman's employees.]" Doc. No. 56-6 at 140-41. Whalen testified that he made this request because he wanted "to prevent any type of problem" and did not want to "hav[e] to restrain [him]self from making any further comments." Id. at 141. At some point

---

[7] Because Whyman has failed to make a showing that his rights were violated by Whalen, whether Whalen's statements to Christopher Whyman prior to the execution of the warrant constitute "threats, intimidation or coercion" within the meaning of the MCRA is a question the Court need not address. In any event, no matter what Whalen said to Christopher Whyman, Whalen possessed the legal right based on the search warrant to enter Whyman's residence. Whalen did not need Whyman's permission.

following Whalen's conversation with the DPW employees, Whyman's hours of work for the DPW were "cut back." Doc. Nos. 56-6 at 142.

There is no general right to continued employment under state or federal law. <u>Fox v. Town of Framingham</u>, No. 14-CV-10337-LTS, 2016 WL 4771057, at *8 (D. Mass. Sept. 13, 2016). A person has a right to continued employment if she has "some contractual right to that employment." <u>Id.</u> (citing <u>Webster v. Motorola, Inc.,</u> 637 N.E. 2d 203, 206 (Mass. 1994). Whyman has presented no facts establishing such a contractual right. His snow removal contact with the city of Somerville specified that his work was on an "as needed basis" and "does not guarantee that [his] services will be utilized." Doc. No. 55 at ¶ 44. Whyman thus had no continued right to employment with the city of Somerville and has presented no other basis for his employment rights claim.

In any event, the MCRA "requires a Plaintiff to demonstrate that [his rights] hav[e] been interfered with, or attempted to be interfered with . . . by 'threats, intimidation or coercion." <u>Meuser v. Fed. Express Corp.</u>, 564 F.3d 507, 516 (1st Cir. 2009). The "plaintiff's perception of a threat, intimidation, or coercion [must] be objectively reasonable. A single physical gesture and comment, unless more overtly physically or verbally threatening . . . cannot form the basis of an objectively reasonable belief of harm." <u>Meuser v. Fed. Express Corp.</u>, 524 F. Supp. 2d 142, 148 (D. Mass. 2007) (citations omitted), <u>aff'd</u>, 564 F.3d 507 (1st Cir. 2009). "[A] collection of minor, possibly harassing incidents cannot be sufficient to satisfy the definition of threatening or coercive conduct . . . especially where there is little evidence of any intent . . . to intimidate[.]" <u>Id.</u> <u>Cf.</u> <u>Cignetti v. Healy</u>, 89 F.Supp.2d 106, 125 (D.Mass.2000) (disregarding fact that plaintiff found remark "I should just shoot you" intimidating when evidence indicated the remark was meant as a joke.).

Whyman argues that his Constitutional right to free speech was interfered with by Whalen's statement to an employee of Whyman's that he "ought to throw his [Whyman's] ass out of here [snow removal detail]." This single, isolated statement, which was not made to Whyman himself, is not enough to constitute a threat, intimidation, or coercion for the purposes of the MCRA. Following the incident, Whalen requested that he be placed away from Whyman so as not to make further comments, and there is no evidence in the record that he did make any further comments to Whyman or any of his employees. See generally Doc. No. 55. Furthermore, there is no evidence that Whalen had any supervisory role, control or influence over Whyman's snow removal contract or work hours or that Whyman believed that Whalen did have such control. Finally, the record is devoid of any evidence that Whalen intended to interfere with Whyman's free speech right. Rather, the uncontradicted testimony of Whalen is that he made his statement out of "frustration" and that he took no actions related to the comment. Doc. No. 56-6 at 137-38, 145. Without more, the facts on the record do not support an inference that Whalen interfered with or attempted to interfere with Whyman's rights or that he did so by threats intimidation or coercion. Summary judgment is therefore ALLOWED as to Counts IV and V.

V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Count VI presents a claim for intentional infliction of emotional distress ("IIED"). See Doc. No. 11 at ¶¶ 86-90. Under Massachusetts law, "[t]he standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir.1996) (citations omitted). To prevail on an IIED claim, a plaintiff must show: the Defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe," Polay v. McMahon, 10 N.E.3d 1122,

1128 (2014). "Conduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." Id. (quotations omitted).

Whyman alleges three types of conduct engaged in by Whalen that, he contends, in combination support a finding of extreme and outrageous conduct: (1) searching Whyman's home "before the entire neighborhood"; (2) stopping Whyman's son Christopher; and (3) commenting to Whyman's employee about the snow detail. Doc. No. 54 at 16. None of this behavior is extreme and outrageous—neither in isolation nor in combination. Whalen's search of Whyman's home was pursuant to a valid search warrant; there are no facts in the record showing that Whyman's behavior during the course of the warrant's execution was extreme or outrageous. Likewise, nothing in the record shows that Whalen's stop of Christopher Whyman was beyond the "bounds of decency," "atrocious," or "utterly intolerable." Accepting Christopher Whyman's version of the car stop, Whalen detained a person leaving the place Whalen was entitled to search so that Whalen could make a peaceable entry to the home rather than breaking down the door. Finally, Whyman's single statement to Whalen's employee was not extreme or outrageous. See id. (finding "single verbal attack" constitutes "nothing more than mere 'insults' or 'threats' of the sort that fail to establish extreme and outrageous conduct."); see also Restatement (Second) of Torts § 46 (1965) (no extreme and outrageous conduct where individual calls telephone operator a "God damned woman, a God damned liar, and says that if he were there he would break her God damned neck").

For the forgoing reasons, summary judgment is ALLOWED as to Count VI.

## VI.   MALICIOUS PROSECUTION CLAIM

Count VII alleges a claim for malicious prosecution. See Doc. No. 11 at ¶¶ 96-101. To show malicious prosecution, a plaintiff must establish that the defendant, *inter alia*, instituted a criminal proceeding against the plaintiff without probable cause. Limone v. U.S., 579 F.3d 79, 89 (1st. Cir. 2009). Here, probable cause existed for the search of Whyman's home. Supra at 2-6. Whyman has asserted no other grounds for his malicious prosecution claim. See generally Doc. Nos. 11; 54 at 17-18. Therefore, as a matter of law, Whyman's malicious prosecution claim fails and summary judgment is ALLOWED as to Count VII.

## VII.   INTERFERENCE WITH ADVANTAGEOUS RELATIONS CLAIM

Count VIII alleges a claim for interference with advantageous relations based upon Whyman's contract with the city of Somerville for snow removal. Doc. No. 11 at ¶¶ 96-101. Under Massachusetts law, to prevail on an interference with advantageous relations claim, a plaintiff must show "that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 860 N.E.2d 7, 12–13 (2007). Here, Whyman has set forth no facts showing that his relationship with the city was "broken" in any way or that he was harmed in any way by Whalen's conduct. Whyman's hours of work "were cut back at some point," Doc. No. 55 at ¶ 216, but Whyman was not an employee of the city of Somerville, but rather an independent contractor, Id. at ¶¶ 43-45. His contract with the city did not guarantee any amount of work or pay. See id. at ¶ 44. Whyman continued to work the snow removal detail for the City for twenty days after Whalen's interaction with Whyman's employee.

16

Id. at ¶ 53. Therefore, that Whyman's hours were cut back "at some point," does not signify a breakage of Whyman's relationship with the city nor that Whyman suffered harm by the Whalen's conduct.

Whyman has failed to set forth sufficient facts from which a reasonable juror could infer the necessary elements of his interference with advantageous relations claim including that the decline in his hours resulted from improper interference by Whalen. Summary judgment is therefore ALLOWED as to Count VIII.

VIII.   DEFAMATION CLAIM

Count X of the Complaint alleges Whyman was defamed by "public and . . . published statements" made by Whalen. Doc. No. 11 at ¶¶ 108-115. The Complaint does not identify any specific statements as defamatory. See Doc. No. 11. Among the general allegations in the complaint, the Court can identify only two alleged statements by Whalen: (1) the statement by Whalen to Whyman's employee that he "outta throw [Whyman's] ass out of here," id. at ¶ 40; and (2) the statements in the search warrant affidavit, id. at ¶ 13. Neither of these statements supports a defamation claim.[8]

---

[8] At a deposition at the very end of discovery, Whyman's fiancée Antonella Alessio said she walked into Whyman's home while the execution of the warrant was in progress, that Whalen showed her the search warrant affidavit and, after some prompting by Whyman's counsel, that Whalen told her that her "boyfriend has been harassing [a] woman." Doc. Nos. 54 at 19-20; 56-7 at 19, 121. This statement was not alleged in the Complaint, see generally Doc. No. 11, and the Complaint was never amended. Although under the Federal Rules of Civil Procedure, a plaintiff is "not required to set forth [in her complaint] the alleged defamatory statements verbatim[,]" Grant v. Target Corp., 126 F. Supp. 3d 183, 192 (D. Mass. 2015) (quoting N. Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 124 (D. Mass. 2007)), the plaintiff is required to "set forth . . . allegations in support of its defamation claim that [a]re sufficient to give the [defendant] fair notice of its claim and the grounds upon which it rests." N. Shore Pharmacy Servs., Inc., 491 F. Supp. 2d at 124. Here, where Whyman failed to plead the context of the alleged defamatory statement, the timing of the statement, and the person to whom the statement was made, Whyman has failed to provide sufficient notice of the alleged defamatory statement to withstand Whalen's Motion to Dismiss. Cf. N. Shore Pharmacy Servs.,

The statements in the search warrant affidavit cannot support a defamation claim because the statements are privileged. "[D]efamation is the publication of material by one <u>without</u> a privilege to do so which ridicules or treats the plaintiff with contempt." <u>Correllas v. Viveiros</u>, 572 N.E.2d 7, 9 (1991). "Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith." <u>Id.</u> "The privilege is not limited to proceedings before a judge, but applies in cases in which judicial powers are exercised [those that are 'quasi-judicial']," including the "issuance of a search warrant." <u>Sibley v. Holyoke Transcript-Telegram Pub. Co.</u>, 461 N.E.2d 823, 826 (1984); <u>cf.</u> <u>Opalenik v. LaBrie</u>, 945 F. Supp. 2d 168, 196–97 (D. Mass. 2013) ("[A]n application for a criminal complaint is generally considered as involving a form of judicial proceeding and the statements made therein are absolutely privileged."). Accordingly, the statements in the search warrant affidavit are absolutely privileged and cannot support a defamation claim.

The statement to Whyman's employee likewise cannot support a defamation claim because it does not imply a probable statement of fact. "Because defamation requires a false statement at its core, opinions typically do not give rise to liability since they are not susceptible to objective verification." <u>McKee v. Cosby</u>, 236 F. Supp. 3d 427, 438 (D. Mass.), <u>aff'd,</u> 874 F.3d

---

Inc., 491 F. Supp. 2d at 124 (finding defamation sufficiently plead where the complaint included the "context in which the allegedly defamatory statements were made and provided an indication as to the timing of the statements and the identity of the person or persons to whom the statements were made"); <u>cf. also</u> <u>Grant</u>, 126 F. Supp. 3d at 193 (allowing Defendant's motion to dismiss defamation claim where Plaintiff failed to alleged in his complaint the "who, what, when, where" of the alleged defamatory statement).

54 (1st Cir. 2017) (quotations omitted). "Merely couching a statement as an opinion, however, will not automatically shield the speaker from liability where the statement implies the existence of underlying defamatory facts." Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015). Thus, the relevant inquiry here is whether Whalen's statement that he "outta throw [Whyman's] ass out of here" "reasonably would be understood to declare or imply provable assertions of fact." See id.

Whether a statement may be understood to declare or imply a verifiable fact "can be decided by the court as a matter of law." Id. at 772. "This task requires an examination of the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation and any cautionary terms used by the person publishing the statement." Id. Here, the conversation between Whalen and Whyman's employee was a short one. Whalen asked the employee, "Do you work for Whyman?" Doc. No. 55 at ¶ 40. The employee answered "yeah." Id. Whalen then said, "I outta throw his ass out of here." Id. The employee responded, "Why d[o] [you] say that?" Id. Whalen answered, "Long story," and then "just walked away[.]" Id. The employee understood Whalen's statement as a "negative comment," but "didn't think much of it at the time." Doc. No. 56-8 at 5-6. He did not find the comment threatening "in any way" and noted that "when there's a bunch of people working all night, you kind of swear." Doc. No. 45-1 at 46-47.

Later, Whyman "said something that kind of rang a bell," the employee remembered his conversation with Whalen, and asked Whyman, "Hey, what did you do to piss off the Somerville Police?" Id. at ¶ 41; Doc. No. 45-1 at 7, 45. Whyman responded, "Ahhhh. What do you mean by that? What are you saying?" and the employee said, "Oh, I was talking to one of the people over there. He said he didn't like you." Doc. No. 45-1 at 7.

Given the totality of the circumstances in which the Whalen's statement was made, the statement implied no defamatory facts but rather only Whalen's negative opinion of Whyman. This is borne out by Whalen's response to Whyman's employee. When the employee asked Whalen what was meant by the statement, Whalen said, "Long story," and walked away. Doc. No. 11 at ¶ 40. The employee understood the comment as negative but did not think much about it. Under the circumstances, the statement is unactionable.

For the forgoing reasons, summary judgment is allowed as to Count X.

IX.    <u>CONCLUSION</u>

For all the foregoing reasons, Defendant Whalen's Motion for Summary Judgment (Doc. No. 44) is ALLOWED as to all remaining counts.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge